# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00987-COA

**ASHLAN JONES**                                                                    **APPELLANT**

**v.**

**STEVEN TYLER CURTIS**                                                             **APPELLEE**

DATE OF JUDGMENT:              07/31/2023
TRIAL JUDGE:                   HON. CHASE FORD MORGAN
COURT FROM WHICH APPEALED:     LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        SAMUEL CHRISTOPHER FARRIS
ATTORNEY FOR APPELLEE:         CHASEN TY SMITH
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 09/17/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Ashlan Jones appeals the Lamar County Chancery Court's decision to modify the child-custody agreement between Jones and her minor child's father, Steven Tyler Curtis. On appeal, Jones claims that the chancery court lacked jurisdiction over the matter and that the chancellor improperly considered evidence that occurred prior to the initial custody determination.

¶2.     After our review, we find no error. We therefore affirm the chancellor's judgment.

## FACTS

¶3.     Jones and Curtis are the natural parents of J.T.,[1] who was born in February 2018.

---

[1] We use initials to protect the identity of the minor child.

Jones and Curtis never married, and until October 2021, they shared physical custody of J.T. pursuant to an oral agreement.

¶4. On October 14, 2021, Curtis filed a complaint for emergency custody of J.T. In his complaint, Curtis alleged that Jones was involved in an abusive relationship with her then-boyfriend, Ryan Bennett. Curtis also alleged that J.T. had witnessed the violent physical abuse between Jones and Bennett, and as a result, Curtis did not believe Jones could provide a safe environment for J.T.

¶5. After a hearing on Curtis's motion, the chancellor entered an emergency order granting Curtis temporary sole physical custody and joint legal custody of J.T. The emergency order granted Jones visitation rights, and Bennett was prohibited from having any contact with J.T.

¶6. On January 7, 2022, the chancellor entered an agreed order dissolving the emergency order and granting the parties joint physical and legal custody of J.T. In the order, the chancellor reinstated the parties' previous visitation and custody schedule, with instructions that physical custody rotate weekly.

¶7. On October 11, 2022, Jones filed a complaint for modification of custody alleging that a material change in circumstances had occurred that adversely affected J.T.[2] Jones stated that because she and Curtis resided in different counties, no fixed place of residence had been established for J.T., who was approaching school age, to be enrolled in kindergarten. Jones also alleged that Curtis failed to take J.T. to his speech therapy appointments during the

---

[2] The record shows that Jones filed an amended complaint that same day, before serving the first one.

weeks he exercised physical custody of J.T. Based on these claims, Jones requested joint legal and sole physical custody of J.T.

¶8. On May 3, 2023, Curtis filed an answer and "counter-complaint" for modification of custody, requesting sole physical and legal custody of J.T. In his counter-complaint, Curtis set forth all the allegations from his October 2021 complaint for emergency custody. He further alleged that (1) Jones "repeatedly and intentionally" withheld J.T.'s location from Curtis, (2) Jones refused to communicate with Curtis or confirm J.T.'s safety during her custodial periods, and (3) Jones left J.T. in the custody of a stranger while she traveled to New York.

¶9. The chancellor held a child-custody modification hearing on June 21, 2023. The parties stipulated that they considered the January 7, 2022 order to be both an initial custody determination and a final judgment for the purposes of the modification hearing. The parties also agreed that testimony and evidence from events and circumstances that took place prior to the entry of the January 7, 2022 order could be submitted at the hearing.

¶10. At the hearing, the chancellor heard testimony from Jones and Curtis, and both parties presented evidence. The chancellor also heard testimony from Bennett, Jones's then-fiancé; Judd Godwin, Bennett's friend; Jennifer Reynolds, Jones's mother; Jade Curtis, Curtis's wife; Andrea Curtis, Curtis's mother; and Lisa Lee, Jade's mother.

¶11. After the hearing, the chancellor entered an order on July 31, 2023, awarding Curtis sole physical custody of J.T. subject to Jones's liberal visitation. The chancellor also awarded the parties joint legal custody of J.T. In the order, the chancellor conducted a

thorough analysis of each *Albright* factor[3] and explained her findings regarding the modification of child custody.

¶12.    Jones now appeals from the chancellor's July 31, 2023 judgment.

## STANDARD OF REVIEW

¶13.    "This Court's scope of review in domestic-relations matters is strictly limited." *Bolivar v. Bolivar*, 378 So. 3d 433, 437 (¶18) (Miss. Ct. App. 2024). When a chancellor's findings are supported by substantial evidence, we will not disturb the findings unless the chancellor abused her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Id.* However, we review questions of law de novo. *Id.*

## DISCUSSION

### I.    Mississippi Rule of Civil Procedure 81

¶14.    On appeal, Jones argues that the chancellor lacked jurisdiction to hear either party's complaint for modification due to insufficient service of process under Mississippi Rule of Civil Procedure 81. "Sufficiency of service of process is a jurisdictional issue, which is reviewed de novo." *S&M Trucking LLC v. Rogers Oil Co. of Columbia Inc.*, 195 So. 3d 217, 221 (¶16) (Miss. Ct. App. 2016).

¶15.    Rule 81 "governs procedure in . . . child custody actions." *Powell v. Powell*, 644 So. 2d 269, 273 (Miss. 1994); M.R.C.P. 81(d)(1). After a modification of child custody action is filed, Rule 81(d)(5) requires a special summons to be issued that "gives notice to the defendant of the date, time, and place to appear" for a hearing. *Pearson v. Browning*, 106

_____

[3] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

4

So. 3d 845, 848 (¶8) (Miss. Ct. App. 2012). "If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent." M.R.C.P. 81(d)(5).

¶16. The record shows that when Jones filed her amended complaint for modification on October 11, 2022, she served Curtis with a Rule 81 summons to appear at a hearing on November 23, 2022. That hearing was continued by an agreed order resetting the matter for February 6, 2023.

¶17. On February 3, 2023, the chancellor signed another agreed order of continuance, and this order was entered on February 7, 2023. However, the February 7 order did not reset the hearing for a specific date, time, or location; rather, the order provided that the hearing "shall be reset for hearing at a time agreed upon and convenient and for the parties and their respective attorneys." Jones argues that because this order did not reset the modification action for a specific date and time as required by Rule 81(d)(5), the chancellor no longer had jurisdiction to hear either party's motion for modification. We agree.

¶18. As stated, Rule 81(d)(5) provides that if a modification of custody action "is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent." However, when an order of continuance is entered but fails to continue the hearing "to a date and time certain," the chancery court loses jurisdiction over the parties. *Curry v. Frazier*, 119 So. 3d 362, 365 (¶11) (Miss. Ct. App. 2013). In the case before us, the order of continuance did not continue the hearing to a date and time certain.

5

¶19. To cure the jurisdictional deficiency, service of an additional Rule 81 summons on the defendant[4] (or a waiver of service) is required. *Vincent v. Griffin*, 872 So. 2d 676, 678 (¶8) (Miss. 2004). However, at no point after the February 7, 2023 agreed order of continuance was a Rule 81 summons served on either party.

¶20. The docket shows that after the entry of the February 7, 2023 agreed order of continuance, no further action was taken until May 3, 2023, when Curtis filed his answer to Jones's complaint for modification and his counter-complaint for modification. While Rule 81(d)(4) states that an answer is not required in a modification-of-custody action, Curtis's filing also set forth his counter-complaint for modification, which *does* require a Rule 81 summons. M.R.C.P. 81(d)(5); *see Hilton v. Harvey*, 284 So. 3d 850, 854-55 (¶¶15-16) (Miss. Ct. App. 2019); *Pearson*, 106 So. 3d at 849 (¶19). It is undisputed that Curtis failed to provide Jones with Rule 81 process. This Court has held that "in Rule 81 matters, a Rule 81 summons must be issued; otherwise, service is defective." *Pearson*, 106 So. 3d at 850 (¶27). When service is defective, "[any] resulting judgment is void because it is made without jurisdiction over the parties." *Id*. at 848 (¶9).

¶21. The following day, on May 4, 2023, the chancery court clerk entered a notice setting the matter for a hearing on May 16, 2023. The hearing was continued two additional times before it was ultimately held on June 21, 2023.

¶22. The record is clear that the chancery court lacked jurisdiction over the parties at the time of the modification hearing. The chancellor failed to require service of an additional

---

[4] A plaintiff, on the other hand, consents to personal jurisdiction in the court where he or she brings his claim. *Pearson*, 106 So. 3d at 848 (¶11).

6

Rule 81 summons after the entry of the February 7, 2023 agreed order, and Curtis failed to provide Jones with Rule 81 service upon the filing of his counter-complaint for modification. *Vincent*, 872 So. 2d at 678 (¶8)*; Pearson*, 106 So. 3d at 850 (¶27). As a result, "[t]he only avenue where the chancery court still would have jurisdiction over [Jones at the time of the hearing] is if [she] waived the lack of a Rule 81 summons by appearing." *Pearson*, 106 So. 3d 851 (¶28). We therefore turn to examine whether Jones waived her objection to the lack of a Rule 81 summons.

¶23. We have held that "[a] respondent may waive the requirements of Rule 81 by appearing at a hearing . . . and defending the charge on its merits without raising any objection related to service of process." *Wallace v. Wallace*, 309 So. 3d 104, 113 (¶40) (Miss. Ct. App. 2020). The record before us shows that Jones attended the June 21, 2023 modification hearing, testified before the chancellor, called three witnesses in her behalf, and introduced documentary evidence. The hearing transcript does not reflect any objection or discussion by the parties or chancellor regarding jurisdiction or service of process.

¶24. In *Isom v. Jernigan*, 840 So. 2d 104, 107 (¶11) (Miss. 2003), the Mississippi Supreme Court found that a defendant waived the requirements of Rule 81 "by [her] attorney making an appearance, failing to challenge jurisdiction or the sufficiency of the service of process and offering evidence on her behalf." Additionally, in *Johnson v. Smith*, 328 So. 3d 145, 151 (¶32) (Miss. Ct. App. 2021), this Court found that the defendant "waived her claim to defective Rule 81 service" where the defendant "appeared at the trial, signed an order acknowledging the chancellor's jurisdiction over the matter, presented witnesses and

7

defended the action on the merits, and failed to object to the lack of a Rule 81 summons at any point during the trial." Similarly, we find that based on the facts of the case before us, Jones waived the requirements of Rule 81 and subjected herself to the jurisdiction of the chancery court.

## II. Res Judicata

¶25. Jones next argues that in the order modifying custody, the chancellor improperly considered facts and events that occurred prior to the January 7, 2022 order, which the parties agreed was an initial custody determination. Jones submits that any evidence of a material change of circumstances in this action was limited to events that occurred after the entry of the January 7, 2022 order. We review a trial judge's decision to admit evidence under an abuse of discretion standard of review. *Rushing v. Rushing*, 724 So. 2d 911, 914 (¶11) (Miss. 1998).

¶26. As a procedural matter, our review of the hearing transcript reflects that Jones failed to object to any of the testimony or evidence regarding facts and events that occurred prior to the January 7, 2022 order. Because Jones failed to object at trial, this issue is waived on appeal. *Powell v. Powell*, 976 So. 2d 358, 363 (¶20) (Miss. Ct. App. 2008). However, we will briefly address the merits of Jones's assignment of error.

¶27. The supreme court has explained that res judicata applies to child custody issues; therefore, "a final judgment preclude[s] thereafter all claims that were or reasonably may have been brought in the original action." *Lackey v. Fuller*, 755 So. 2d 1083, 1086 (¶13) (Miss. 2000). In *Lackey*, the parties were granted a divorce due to irreconcilable differences.

8

*Id*. at 1085 (¶6). In the original divorce decree, the chancellor found that both parties were "fit, proper and suitable persons to have the care, custody and control of the minor children." *Id*. at 1085 (¶14). The wife later filed a motion seeking to modify child custody. *Id*. at (¶11). At a hearing on the motion, the chancellor allowed testimony about events that occurred prior to the granting of the original divorce decree. *Id*. On appeal, the supreme court held that "[b]ecause the chancellor specifically found [in the original divorce decree] that both parents were fit, pre-divorce conduct is res judicata as to the hearing regarding the modification of child custody. The chancellor clearly abused his discretion in revisiting that which had already been laid to rest." *Id*. at (¶14). In *Martin v. Stevenson*, 139 So. 3d 740 (Miss. Ct. App. 2014), which Jones cites in her appellate brief, this Court recognized the supreme court's holding in *Lackey* and further explained that conduct occurring prior to the final judgment can be considered, but only when the past conduct can be tied to current conduct. *Id*. at 750-51 (¶34).

¶28. Unlike the underlying order in *Lackey*, the January 7, 2022 order in the case before us was not a final order. At the modification hearing, the parties stipulated that the January 7, 2022 order was an initial custody determination and a final judgment, and the chancellor agreed that the order "could be perceived as an initial custody determination." However, the chancellor stated that the January 7, 2022 order "is neither styled as a Final Order, nor does it specifically award legal or physical custody to either party[.]" Additionally, our review of the January 7, 2022 order shows that it contained no determination as to the best interest of the child; rather, it "simply restated the status quo" as to the parties' oral custody

9

arrangement. *Waller v. Waller*, 754 So. 2d 1181, 1184 (¶¶14-16) (Miss. 2000) (finding that res judicata did not apply to an order concerning child custody that made no determination "as to the best interest of the child in deciding custody . . . but simply restated the status quo"). Our law is clear that "res judicata only applies to final judgments on the merits." *Griffin v. Adams*, 291 So. 3d 825, 827 (¶6) (Miss. Ct. App. 2020).

¶29. Regardless of whether the order was temporary or final, the supreme court has held that when determining whether to modify child custody, "[a] chancellor must allow full and complete proof with respect to all circumstances and conditions directly or indirectly related to the care and custody of the children, existing at the time of the original divorce decree [or custody order] and at the time of the modification hearing." *Smith v. Todd*, 464 So. 2d 1155, 1157 (Miss. 1985); *see Powell v. Powell*, 976 So. 2d 358, 363 (¶21) (Miss. Ct. App. 2008). This Court has also explained that

> [w]hen the chancellor's chief concern is to determine the "best interest of the child" when faced with child custody issues, limiting otherwise relevant evidence only because it was already considered by a previous court in a previous proceeding could potentially frustrate the very goal the court is trying to accomplish—determining the best interest of the child.

*Roberts v. Conner*, 332 So. 3d 272, 288 (¶46) (Miss. Ct. App. 2021).

¶30. Furthermore, the July 31, 2023 order modifying custody reflects that the parties agreed the evidence at the modification hearing should include testimony and evidence of events that occurred prior to the entry of the January 7, 2022 order. The chancellor explained that

> at the start of the hearing . . . , the Court conferred with the attorneys in this cause who both agreed that while they interpreted the [January 7, 2022 order] as an initial custody determination, the hearing on [the complaints for modification] needed to include testimony and evidence from events and

10

circumstances that took place prior to the entry of the January 7, 2022[] [o]rder.

As stated, Jones did not object to any testimony or other evidence concerning events that occurred prior to the entry of the January 7, 2022 order. In fact, during the hearing, Jones's attorney cross-examined Curtis about events that occurred before J.T. was even born.

¶31. Jones also argues that the chancellor erred in modifying custody because Curtis presented "zero evidence" to show that Jones's conduct or behavior had any adverse effect on J.T. The supreme court has held that "the advent of school age [is] a material change in circumstances that render[s] the split custody of the child useless and even harmful to the child." *Torrence v. Moore*, 455 So. 2d 778, 780 (Miss. 1984). This Court has also held that "[a child] beginning school, by itself, can be deemed to be a material change in circumstances." *Pearson v. Pearson*, 11 So. 3d 178, 183 (¶12) (Miss. Ct. App. 2009).

¶32. After our review, we find that the chancellor did not abuse her discretion by considering events and circumstances that occurred prior to the January 7, 2022 order.

¶33. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**